Pamela McKAY, Plaintiff–Appellant,

v.

**TOYOTA MOTOR MANUFACTURING, U.S.A., INC., Defendant–Appellee.**

No. 95–5617.

United States Court of Appeals, Sixth Circuit.

Argued May 13, 1996.

Decided April 8, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied May 12, 1997.*

---

* Judge Hillman would grant rehearing for the reasons stated in his dissent.

Before: NORRIS and DAUGHTREY, Circuit Judges; HILLMAN, District Judge.**

NORRIS, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. HILLMAN, D.J. (pp. 374–82), delivered a separate dissenting opinion.

ALAN E. NORRIS, Circuit Judge.

Plaintiff Pamela McKay appeals the district court's order granting summary judgment to defendant Toyota Motor Manufacturing, U.S.A. Plaintiff alleged that she was terminated from her assembly-line position with Toyota in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, because of a physical disability caused by carpal tunnel syndrome. We affirm the judgment of the district court because we conclude that plaintiff's impairment disqualified her from only a narrow range of repetitive-motion positions and not from working in the broader class of manufacturing jobs. She was therefore not an individual with a disability who qualified for protection under the Act.

## I.

Plaintiff began working in Toyota's Georgetown, Kentucky, plant in March 1992, shortly before her twenty-third birthday. She initially worked in the body-weld division, but reported to the company's health service after just ten days on the production line.

The health service placed her on a modified work program consistent with company policy. She was restricted to lifting weights of less than ten pounds, was to avoid pushing or pulling, and was told to avoid vibrating tools. Despite an attempt to re-introduce her to the line, she suffered pain in her right forearm and was sent home for rest on April 22. She returned to work on May 11, but complained of pain and swelling after one

Thomas W. Moak (argued and briefed), Stumbo, Bowling & Barber, Prestonsburg, KY, for Plaintiff-Appellant.

John A. West, Jeffrey A. Savarise (argued and briefed), Thomas M. Williams, Greenebaum, Doll & McDonald, Louisville, KY, for Defendant-Appellee.

** The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

day of restricted duty. After another furlough, she returned to modified duty in the body-weld department on June 8.

On September 22, an orthopedic surgeon diagnosed plaintiff with carpal tunnel syndrome and muscle inflammation. After undergoing a physical therapy program in December, plaintiff returned to work on a modified duty assignment in the plastics department. Eventually, plaintiff began working full-time in the plastics department with some physical restrictions: maximum lifting of twenty pounds; no vibrating tools; and no repetitive use of her right hand. Nonetheless, on May 24, 1993, plaintiff advised her group leader that she continued to have considerable pain in her arm and was sent home for rest by the in-house health service. On June 4, Toyota terminated her for excessive absences, pursuant to its medical leave of absence policy. In her complaint, plaintiff alleged she is a "qualified individual with a disability" and that defendant discharged her "because of her disability."

## II.

█ The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A person seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1179 (6th Cir.1996). Because the district court concluded that plaintiff had not established she was a disabled person as contemplated by the Act, it did not consider whether she was qualified to perform the essential functions of her job with or without accommodation, or whether she was discharged because of her disability.

The ADA provides this definition of disability:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The ADA empowers the Equal Employment Opportunity Commission ("EEOC") to promulgate regulations that will further define the scope and reach of the statute. 42 U.S.C. § 12116. The EEOC has defined "major life activity" to include both caring for oneself and working. 29 C.F.R. § 1630.2(i). Plaintiff contends that her disability limits both of these activities. In reaching its decision as to whether plaintiff was in fact a disabled person, the district court held:

In order to show that she is substantially limited in the major life activity of working, McKay must prove that she is "significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

. . . .

At the time of her termination from [Toyota], McKay was a 24 year old college graduate, working on earning her teaching certificate. Given her educational background and age, she is qualified for numerous positions "not utilizing" the skills she learned as an automobile assembler. Merely because she can no longer perform repetitive factory work does not render her significantly limited under the ADA.... McKay has not established that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes as compared to similarly-situated persons with comparable training, skills and abilities. Therefore, she is not substantially limited in the major life activity of working.

*McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 878 F.Supp. 1012, 1015 (E.D.Ky.1995). The court also concluded that plaintiff was not

limited in the "major life activity" of caring for herself because "the only household function McKay claims to be substantially limited in is mopping." *Id.* Finally, the court concluded that a diagnosis of carpal tunnel syndrome, by itself, was insufficient to raise a genuine issue of material fact concerning whether plaintiff was disabled within the contemplation of the ADA. *Id.* at 1016.

On appeal, plaintiff contends that genuine issues of material fact concerning whether she is an individual with a disability precluded summary judgment. The EEOC, as amicus curiae, joins the argument on her side of the table, contending that:

> The ADA and its implementing regulations require the court to look at the class of jobs from which McKay is *disqualified,* not the class of jobs that she can perform. Because of her carpal tunnel syndrome, McKay is disqualified from performing any manual labor exceeding light duty. She therefore cannot perform (without accommodation) the job at issue with Toyota. She also cannot perform (without accommodation) manual labor for any other employer. Accordingly, McKay is disqualified from an entire class of jobs. Her ability to perform completely unrelated work has no bearing on whether she is "disabled" with respect to manual labor. . . .
>
> . . . .
>
> . . . The court should have looked at the extent to which McKay's impairment disqualifies her from the type of job at issue, not the extent to which she can do other work.

█ This court reviews the award of summary judgment de novo, using the same standard as the district court. *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 149 (6th Cir. 1995). Having conducted such a review, we now affirm the judgment below.

█ Under the terms of the ADA, all parties agree that carpal tunnel syndrome constitutes a "physical impairment." The next question, then, is whether plaintiff's condition "substantially limits" a major life activity. As already noted, working falls within the definition of major life activity. According to

the relevant regulation, "The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added). Plaintiff appears to contend that the district court based its ruling upon a holding that her carpal tunnel syndrome only rendered her unable to perform a single, particular job. The EEOC, on the other hand, argues the district court's holding is predicated on the jobs plaintiff *could* perform, rather than those she *could not* perform. We think both read the district court's opinion too narrowly.

As the regulations make clear, the question before the district court concerned whether plaintiff had carried her burden of establishing that her physical impairment significantly restricted her ability to perform "either a class of jobs or a broad range of jobs in various classes." In making this determination, a court should consider:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). In addition, courts may consider several other factors:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowl-

edge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii). Although the EEOC characterizes the summary judgment evidence as disqualifying plaintiff "from performing any manual labor exceeding light duty," precluding her from performing an entire class of jobs, the record does not support that view of the evidence. Instead it supports the district court's view that plaintiff can no longer perform repetitive-motion factory work. Plaintiff's condition does not significantly restrict her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. 878 F.Supp. at 1015 "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (quoting *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)); *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985).

The *Wooten* case was decided on facts similar to those before us and illustrates the point that not every impairment qualifies as a disability protected by the ADA. Wooten was diagnosed with carpal tunnel syndrome and was restricted by his doctor to "light duty—no work with meat products—no work in cold environment—lifting 10 lbs. frequently 20 lbs. maximum." 58 F.3d at 384. In the ADA-based suit that followed Wooten's termination as a meat cutter in a meat-packing plant, his employer was granted summary judgment since there was no material issue of fact in dispute to indicate that Wooten had, or was regarded as having, an impairment that substantially affected his ability to work. In affirming, the court of appeals noted that his impairments, "whether regarded as permanent or temporary, only appeared to prevent him from performing a narrow range of meat-packing jobs." 58 F.3d at 386.

Essentially, like the plaintiff in *Wooten*, plaintiff in this case says the evidence regarding her physical impairment compels a conclusion that she is significantly restricted in her ability to perform any medium or heavy work. While she did present expert testimony to that effect, the same expert, when pressed, acknowledged that the positions she held at Toyota did not involve medium or heavy work. He also conceded that there were a broad range of jobs that she could perform. Since plaintiff's work history at Toyota involved only light work, and she made no showing that she ever was able to perform medium or heavy work, one is hard pressed to comprehend how she could have been regarded as a "qualified individual" with respect to medium and heavy work.

In light of the regulatory framework of the ADA, we hold that the physical restrictions caused by plaintiff's disability do not significantly restrict her ability to perform the class of jobs at issue, manufacturing jobs; at best, her evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds. It follows that her limited impairment would not significantly restrict her ability to perform a broad range of jobs in various classes.

Recent decisions from other circuits, as well as our own court's construction of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, support our holding. For instance, this court has held that a postal employee who suffered from strabismus that prevented him from working at a letter sorting machine was not handicapped under the terms of the Rehabilitation Act [1] because he could still carry out other duties at the post office and thus his impairment did not substantially limit a major life activity. *Jasany*, 755 F.2d at 1249; *accord Heilweil v. Mount Sinai Hosp., supra; Welsh v. City of Tulsa*, 977 F.2d 1415, 1417 (10th Cir.1992) (major life activity

---

1. Because the ADA regulations adopted many of the definitions used by the Rehabilitation Act, courts have universally looked to Rehabilitation Act cases as a source of guidance when constru-

ing the ADA. *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942–43 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

of working does not mean working at a job of one's choice). Courts have drawn a similar distinction with respect to the ADA. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995) (arm impairment did not prevent plaintiff from working in the entire class of welding jobs, just those requiring substantial climbing).

Finally, we agree with the district court that plaintiff has failed to show that her disability substantially limits her ability to care for herself.

### III.

For the foregoing reasons, the judgment of the district court is **affirmed**.

HILLMAN, District Judge, dissenting.

The majority, by this decision, holds that an individual who provided competent and unimpeached expert testimony that her physical impairment disqualifies her from performing *all* heavy duty jobs, *all* medium duty jobs, as well as those light and sedentary jobs requiring repetitive motion, does not, as a matter of law, have a substantial impairment of the major life activity of working. Because I am unable to reconcile this conclusion with the facts or with what I view as a reasonable interpretation of the ADA, regulations, agency views or case law, I respectfully dissent.

### I. *DISCUSSION*

This matter is before us on appeal from the district court's grant of summary judgment. On a motion for summary judgment, the court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The sole question addressed by the district court was whether plaintiff had demonstrated a genuine issue of material fact for jury submission concerning whether she had a "disability" within the meaning of the ADA. In other words, did plaintiff have a "physical or mental impairment that substantially lim-

it[ed] one or more of [her] major life activities…"? 42 U.S.C. § 12112(a) (defining "disability"). The district court concluded that plaintiff had failed to prove that she was substantially limited in the major life activity of caring for oneself. In addition, the court concluded that she was not substantially limited in the major life activity of working because, in light of her skills, which included a college education, plaintiff remained able to perform a substantial number of jobs in a variety of classes.

On appeal, plaintiff contends that she put forward substantial expert testimony on the number and classes of jobs from which she was disqualified by her impairment. In addition, the Equal Employment Opportunity Commission ("EEOC") as *amicus curiae* challenges the district court's reliance on the number of jobs plaintiff continued to be able to perform rather than the number of jobs her impairment prevented her from performing. The EEOC also argues that plaintiff's lifting restrictions alone are sufficient to create a jury question on plaintiff's substantial impairment to the major life activity of lifting.

I conclude that, as demonstrated below, plaintiff has presented ample evidence of a disability to withstand summary judgment.

### A. *Factual Problems*

Plaintiff claims that she is substantially limited in the major life activity of working. She contends that she has introduced substantial evidence that she is "significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

The majority acknowledges that plaintiff presented facts to show that she was restricted from lifting more than 10 to 12 pounds regularly and 20 pounds maximum, from using vibrating tools, and from tasks requiring repetitive motion with her right hand. Despite recognizing these limitations, the majority states that the record does not support the view that plaintiff was disqualified from

performing any manual labor exceeding light duty. Maj. op. at 372–73.

In making this statement, the majority disregards key expert testimony to the contrary. In opposition to defendant's motion for summary judgment, plaintiff presented the deposition testimony of various experts. Dr. Ralph Crystal, a vocational expert and expert on the ADA, expressly stated that plaintiff was restricted from all medium and heavy duty jobs and restricted from those light and sedentary jobs requiring repetitive activities:

Q. Specifically regarding Pamela McKay, do you think that there are certain classes of jobs that she is now limited from performing because of her disability?

A. She's limited from classes of jobs which are categorized medium/heavy in exertion, yes sir.

Q. And based upon the restrictions that would be contained in Dr. Banerjee's report, is she otherwise limited in sedentary and light work?

A. Well, in Dr. Banerjee's she's limited more in terms of the other part of that definition, the broad range of jobs where, you know, he doesn't address the weight restriction, but he does talk about repetitive types of job activities and positions where she can move from sitting and changing positions. Those are the types of things that would eliminate many categories of jobs.

J.A. at 524. Crystal goes on to define "heavy," "medium," "light," and "sedentary" work:

A. Heavy work entails lifting up to 100 pounds on occasion, 50 pounds frequently; medium work is 50 pounds on occasion, 25 pounds frequently; light work involves lifting 20 pounds on occasion, 10 pounds frequently; sedentary work involves lifting 10 pounds on occasion, 3 to 5 pounds frequently.

J.A. at 534. Dr. Crystal testified further that plaintiff's repetitive motion restrictions would require certain accommodations for the performance of jobs outside of manufacturing, such as clerical and writing jobs, including jobs requiring a computer. J.A. at 532. He testified that she is disqualified from "many classifications of [light-duty] jobs based upon her restrictions." J.A. at 537. He further opined that, under the ADA, a person restricted only to light-duty work would have a disability under the Act. J.A. at 540.

Another of plaintiff's experts, Dr. Einbecker, an orthopedist and hand surgeon, testified that, in addition to plaintiff's restrictions on lifting and repetitive motion, he would restrict plaintiff from frequent pushing and pulling. J.A. at 611–612. Einbecker stated that plaintiff's restrictions were considered "a light duty restriction." *Id.* He further specifically testified that she could not perform "heavy or medium type work jobs." J.A. at 630. Dr. Tsai, another orthopedic surgeon, also testified that plaintiff could do only light duty and occasional medium duty work. J.A. at 876.

It is apparent from these citations to the sworn record, which are not exhaustive, that plaintiff unequivocally provided expert evidence that she was disqualified "from performing any manual labor exceeding light duty." The majority, therefore, has failed to consider the evidence in the light most favorable to the plaintiff. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

**B.** *Agency Views*

In addition, the majority fails to discuss two important interpretations of the statute by the EEOC. The majority's result is not only at odds with these interpretations, but fails to offer any basis for its disagreement.

Under its authority as the agency charged with interpretation of the ADA, the EEOC has promulgated regulations, *see* 29 C.F.R. Part 1630 (1996), as well as what is known as Interpretive Guidance on Title I of the Americans With Disabilities Act (hereafter "Interpretive Guidance"), attached as an appendix to that part of the regulations. Interpretive Guidance, 29 C.F.R. Part 1630, Appendix (1996).

As the Supreme Court repeatedly has held,

> As an "administrative interpretation of the Act by the enforcing agency," *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, [91 S.Ct. 849, 854–855, 28 L.Ed.2d 158] (1971), these Guidelines, " 'while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,' " *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–142, [97 S.Ct. 401, 411, 50 L.Ed.2d 343] (1976), quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, [65 S.Ct. 161, 164, 89 L.Ed. 124] (1944).

*Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (interpreting EEOC guidelines on Title VII). Such an administrative interpretation "is entitled to great deference." *Griggs,* 401 U.S. at 433–34, 91 S.Ct. at 854.

> [When] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). *See, e.g., Harris v. H & W Contracting Co.,* 102 F.3d 516, 521 (11th Cir.1996) (holding that *Chevron* standard must be applied to EEOC regulations and Interpretive Guidance issued for the ADA).

The regulations and Interpretive Guidance are instructive in two ways relevant to the instant case. First, under the agency's interpretation, lifting constitutes a "major life activity." Second, plaintiff's proof that she was substantially limited in her ability to work is squarely within the agency's description of the kind of proof that would support a finding of a substantial limitation on working.

1. *"Lifting"*

The EEOC's Interpretive Guidance specifically includes lifting as a major life activity:

> "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, *lifting,* reaching.

Interpretive Guidance, App. § 1630.2(i), at 339 (emphasis added) (citing Senate Report at 22; House Labor Report at 52; House Judiciary Report at 28).

Moreover, the regulations provide that an individual is "substantially limited" if she is

> Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1630.2(j)(1)(ii). The agency's guidance provides an instructive example of such limitation:

> [F]or example, an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking.

Interpretive Guidance, App. § 1630.2(j), at 339. In other words, a plaintiff need not prove that she is entirely unable to perform the major life activity of lifting, but only that, relative to the average person without an impairment, she has a substantial limitation in her performance of the activity.

Here, plaintiff has presented evidence that she is substantially limited in her ability to lift. She is restricted from lifting more than 10 to 12 pounds regularly and more than 20 pounds occasionally. On the basis of these restrictions, a jury would be entitled to conclude that plaintiff was substantially limited in her ability to lift in comparison with an average person in the population without such restrictions. *Compare Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th

Cir.1996) (holding that lifting is a major life activity and that inability to lift more than 15 pounds creates genuine issue of material fact as to whether impairment substantially limits the ability to lift), *with Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (holding that 25–pound overall lifting limitation is not, as a matter of law, a significant impairment of ability to lift).

Despite the fact that the question of whether plaintiff was substantially limited in her ability to lift was argued in the brief and the evidence to support the issue was squarely within the record, the majority opinion fails to mention the agency's interpretation. I acknowledge that plaintiff did not focus on the major life activity of lifting in her arguments to the district court. However, the facts regarding the limitation clearly were before that court and plaintiff directly quoted that part of the Interpretive Guidance stating that lifting was a major life activity. Plaintiff asserted that the limitation on lifting also substantially limited her ability to work various classes of jobs. Because the facts before the court clearly demonstrate a genuine issue of fact whether plaintiff has a lifting restriction, I would hold that summary judgment was improper for that reason alone. *See Lowe,* 87 F.3d at 1174 (court need not reach the issue of whether plaintiff was substantially limited in working if it finds a genuine issue of fact that she was substantially limited in lifting).

### 2. *"Working"*

Both the regulations and Interpretive Guidance specifically address the issue of what constitutes an impairment that "substantially limits" the major life activity of working.

As previously noted, the regulations provide that:

(3) With respect to the major life activity of "working"—

(i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The regulations instruct that to determine whether plaintiff is substantially limited, the court may look to "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [plaintiff's] geographical area, from which ... plaintiff is also disqualified because of the impairment (class of jobs)." *See* 29 C.F.R. § 1630.2(j)(3)(ii)(B). Alternatively, the court may consider "the numbers and types of other jobs not utilizing similar ... skills ... from which plaintiff is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii)(C). In other words, the regulations instruct the court to look to the relative significance of the numbers of positions from which plaintiff is *dis*qualified by her impairment, not those for which she remains qualified. *See* C.F.R. § 1630.2(j)(3)(i), (3)(ii)(B) & (C).

It is difficult to conceive how a person restricted from all heavy and medium duty jobs, as well as many light and sedentary jobs, has not proven that she is disqualified both from a "class" of jobs and from a range of jobs in various classes. Yet the majority describes plaintiff's impairment as limiting her ability to perform only a narrow range of jobs. It does so by simply choosing to characterize plaintiff's evidence on the scope of her limitation as an inability to "perform repetitive-motion factory work." Maj. op. at 373. The majority then proceeds to hold, as a matter of law that

the physical restrictions caused by plaintiff's disability do not significantly restrict her ability to perform the class of jobs at issue, manufacturing jobs; at best, her evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds.

Maj. op. at 374.

This summary of plaintiff's limitations is at best disingenuous. By limiting the set of jobs that the majority calls the "class of jobs

at issue" to "assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds," the majority suggests that the range of limitation is relatively narrow. This definition of the relevant "class" of jobs, however, is not found in the record. Plaintiff's experts did not testify that she was limited from performing only assembly-line jobs, or even manufacturing jobs, but limited from *all* jobs requiring repetitive motion or frequent lifting of more than ten pounds. No evidence in the record suggests that *anyone* has testified with regard to the proffered "class" of jobs defined by the majority.

Moreover, the majority ignores the fact that the agency has provided guidance in interpreting what is meant by "class of jobs" and the nature of the proof plaintiff is required to present. The Interpretive Guidance expressly states that plaintiff's burden of showing an impact on a class of jobs was not intended by the EEOC to be great:

> The terms "numbers and types of jobs" and "number and types of other jobs," as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., "few," "many," "most") from which an individual would be excluded because of an impairment.

Interpretive Guidance, App. § 1630.2(j), at 340–41. Plaintiff's expert, Dr. Crystal, expressly testified that plaintiff's restrictions disqualified her from *all* heavy and medium duty jobs, J.A. at 524, as well as from *"many* classifications of jobs" within the light-duty work category, J.A. at 537 (emphasis added).

In addition, the EEOC Interpretive Guidance includes an example that is directly applicable to the testimony in this case:

> [A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so

even if the individual were able to perform jobs in another class, *e.g.,* the class of semi-skilled jobs.

Interpretive Guidance, App. § 1630.2(j), at 340. In other words, the EEOC has stated that disqualification from all heavy duty jobs constitutes being limited in performing a "class of jobs" within the meaning of the regulations. Being disqualified from such a class may constitute a disability. *See Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (recognizing agency definition of "heavy duty jobs" as "class of jobs"); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 487 (8th Cir.1996) (same).

In the instant case, as in the example, plaintiff has been disqualified by expert testimony from all heavy duty jobs, as well as all medium duty jobs and many light and sedentary jobs that require repetitive motion. Plaintiff presented precisely the kind of evidence contemplated by the EEOC. She clearly provided evidence about recognized occupational classifications (i.e., heavy, medium, light and sedentary jobs) and about how many of the jobs in these classifications she could not perform (i.e., "all" and "many").

In addition, the Interpretive Guidance offers an example to understand what is meant by a "broad range of jobs in various classes":

> [S]uppose an individual has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult. Since this individual would be substantially limited in the ability to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

Interpretive Guidance, App. § 1630.2(j), at 340. Plaintiff's evidence established that her limitations on repetitive motion and lifting affected a broad range of jobs in various classifications. Moreover, at least one of plaintiff's experts testified to the need for accommodations in specific kinds of jobs outside manufacturing, including clerical jobs requiring writing and computer usage. Taken together, plaintiff's proofs clearly present-

ed a jury question on whether she was disqualified from the kind of broad range of jobs contemplated by the agency in the quoted example.

Accordingly, the majority's description of the "class" of jobs at issue in this case, *i.e.*, "assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds," constitutes a distortion not only of the evidence, but also the agency's understanding of what it meant by "class of jobs" and "range of jobs in various classes."

## C. *Legislative Intent*

As I previously observed, this court is required to give deference to the agency's interpretation unless it appears from the statute or legislative history that Congress intended otherwise. *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83. The majority fails to discuss either the agency interpretation or to explain how that interpretation is "based on an [im]permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. A review of the statute and legislative history, however, reveals nothing either in the language or history of the statute that is inconsistent with the agency's interpretation.

The ADA itself does not specifically define "major life activities." Accordingly, the statute itself does not expressly address what constitutes a substantial limitation on the major life activity of working.

The legislative history, however, contains one example reflecting what Congress contemplated as an impairment that substantially limits the major life activity of working. That example, while not directly applicable to this case, is instructive:

A person with an impairment who is discriminated against in employment is also limited in the major life activity of working. However, a person who is limited in his or her ability to perform only a particular job, because of circumstances unique to that job site or the materials used, may not be substantially limited in the major life activity of working. For example, an applicant whose trade is painting would not be substantially limited in [t]he major life activity of working if he

has a mild allergy to a specialized paint used by one employer which is not generally used in the field in which the painter works.

H.R.Rep. No. 101–485(III) (Report of House Judiciary Committee), at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 451–52. The example illustrates the distinction between an impairment that limits the ability to perform a single job or discrete set of jobs and the ability to perform broad classes of jobs. The described painter would not be covered if he were allergic to the specialized paint used by a single employer. By implication, however, the matter would be quite different if he were allergic to paint "generally used in the field in which the painter works." If anything, the example suggests that even the majority's proposed class (assembly line jobs not requiring repetitive motion or frequent lifting of more than 10 pounds) is a sufficiently broad classification of jobs to constitute a substantial limitation on plaintiff's ability to work. At a minimum, the example illustrates that the agency's conclusion that "heavy duty jobs" constitutes a class of jobs clearly is consistent with the limited evidence available in the statutory history.

## D. *Case Law*

In support of its decision, the majority has cited only five cases. With due respect, I submit that not one of the cited cases supports the decision.

The broadest case cited by the majority is *Wooten v. Farmland Foods,* 58 F.3d 382 (8th Cir.1995). The *Wooten* court held that a plaintiff had failed to prove a substantial limitation on his ability to work when he provided evidence that he was limited from performing a narrow range of meat packing jobs. *Id.* at 386. The majority suggests that because certain of plaintiff's restrictions in *Wooten* were similar to those in the instant case, *Wooten* supports its decision. I disagree.

In *Wooten,* the plaintiff was a meat packer whose doctor temporarily restricted him to light duty, not in a cold environment. While the lifting restrictions were in some ways similar (although temporary) to plaintiff's in

the instant case, nothing in the *Wooten* case suggests that Wooten presented evidence about how his restrictions affected jobs other than certain meat-packing positions. In other words, Wooten apparently attempted to prove his case by reference only to his in-plant limitations, rather than by proving that he was disqualified from a larger class or range of jobs. The *Wooten* court held only that such limited proofs were insufficient to withstand summary judgment.

That pattern of proof was not repeated in the instant case. Plaintiff expressly directed her proofs to jobs across vocational fields, not just those at Toyota. *Wooten* therefore is not dispositive.

The majority also relies upon *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) (applying the Rehabilitation Act, 29 U.S.C. § 794). In *Jasany*, this court held that plaintiff, who proved only that his vision disability prevented him from using a mail sorting machine, had not proved a substantial limitation because he had demonstrated only that he was limited from doing a single postal position, not a class of jobs or even a large group of jobs within the post office. Nothing in *Jasany* is dispositive of the instant case. In fact, the EEOC's Interpretive Guidance expressly acknowledges that *Jasany* represents a proper application of the standard because it stands for the proposition that being disqualified from a single job or narrow class of jobs does not constitute a substantial impairment of the major life activity of working. *See* Interpretive Guidance, App. § 1630.2(j), at 340.

The remaining three cases cited by the majority are similarly unhelpful. In *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995), the court held that plaintiff administrator had not proved that she was substantially limited in the major life activity of working where her evidence proved only that her asthma limited her ability to work in a specific location at defendant hospital, the blood bank. The court specifically relied upon the fact that Heilweil had offered no proof that her asthma was triggered by work in any poorly-ventilated area.

Similarly, in *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727–28 (5th Cir.1995), the court held that plaintiff had proved only that her arm impairment limited her from performing those welding jobs requiring her to climb. The court expressly found that Dutcher had offered no proof that she was unable to perform all welding jobs. Indeed, the defendant shipbuilder continued to employ her as a welder, but did not allow her to transfer to a particular area of the plant requiring welders to climb as much as 40 feet to perform their tasks.

The last case on which the majority relies, *Welsh v. City of Tulsa*, 977 F.2d 1415, 1417 (10th Cir.1992), concerned an applicant who was denied a city firefighting position because he had "a minor residual sensory deficit in the ring and little fingers of his right hand." The court held that plaintiff had offered proof only that his impairment disqualified him from a position as firefighter in a single city's fire department. He presented no evidence that he was disqualified from positions other than firefighting. In fact, plaintiff presented nothing but speculation that any other fire department might consider the impairment to be a dangerous insensitivity that was disqualifying. As a result, the court held that plaintiff had failed to present evidence that he was disqualified from a class of jobs or a broad range of jobs in various classes.

None of the above cases addressed a similarly broad class or range of jobs as that from which plaintiff is excluded. In fact, each of the cases specifically noted the plaintiff's failure to prove limitation in more than a specific job or narrow range of jobs. Accordingly, no case cited by the majority supports its sweeping holding.

In contrast, other courts have held that proof of limitations similar to plaintiff's is sufficient to withstand summary judgment. In *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 911 (7th Cir.1996), the court held that "[t]he physical restrictions Cochrum's physician placed upon him—no overhead work, heavy lifting, or pulling and pushing out from his body—might apply to a broad range of jobs, and are more than job specific." *Id.*

In light of the breadth of Cochrum's physical restrictions, the court held that "a reasonable jury could conclude that Cochrum's shoulder impairment does substantially limit his ability to work." *Id.*

*Cochrum* is squarely on point with the instant case. Like Cochrum, plaintiff is limited from heavy lifting and pulling and pushing motions. In fact, plaintiff in the instant case presented evidence of far more restrictive lifting limitations than Cochrum, as well as repetitive motion limitations. Moreover, here, unlike in *Cochrum*, plaintiff's expert expressly testified about classes of jobs from which plaintiff was restricted. Under the analysis of *Cochrum*, therefore, plaintiff was entitled to a jury determination on the issue of substantial limitation.

In addition, I submit that the majority's decision conflicts with this court's holding in *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir.1996). In *Roush*, plaintiff provided evidence that she had a bladder condition that caused her such substantial pain that she could not work without medication. Plaintiff also presented evidence that she needed to be treated by her physician monthly or semi-monthly for infections and pain. This court held that on these limited facts plaintiff had created a genuine issue of material fact as to whether her bladder condition substantially limits her working.

Plaintiff's evidence of limitation in the instant case is far more substantial and detailed than that held to be sufficient in *Roush.* Since the court held that the facts in *Roush* created a jury question, the facts here clearly do also. *See also Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1133–34 (11th Cir.1996) (holding that it was a question of fact whether symptoms of depression, including profound fatigue and difficulty concentrating, substantially limited ability to work).

Accordingly, I conclude that the case law not only fails to support the majority's decision, but in fact cuts against that decision.

### E. *Remaining Concerns*

The preceding analysis in my judgment clearly establishes that the facts, agency interpretations, statutory history and case law all require reversal of the district court's decision. I pause, however, to take particular exception to the fourth from last paragraph of the majority opinion. The majority writes:

> Essentially, like the plaintiff in *Wooten,* plaintiff in this case says the evidence regarding her physical impairment compels a conclusion that she is significantly restricted in her ability to perform any medium or heavy work. While she did present expert testimony to that effect, the same expert, when pressed, acknowledged that the positions she held at Toyota did not involve medium or heavy work. He also conceded that there were a broad range of jobs she could perform. Since plaintiff's work history at Toyota involved only light work, and she made no showing that she ever was able to perform medium or heavy work, one is hard pressed to comprehend how she could have been regarded as a "qualified individual" with respect to medium and heavy work.

Maj. op. at 373. This paragraph is disturbing, and I am at a loss to reconcile its various conclusions with the facts of the case or prevailing law.

First, the second sentence of the paragraph concedes that plaintiff presented evidence that she was disqualified from performing all medium and heavy work. While this observation unquestionably is accurate, it is at odds with the majority's earlier statement that "the record does not support [the] view" that plaintiff is disqualified "from performing any manual labor exceeding light duty." Maj. op. at 373. This belated concession of plaintiff's actual proofs undermines the majority's entire holding.

Second, the third sentence states that "there were a broad range of jobs that [plaintiff] could perform." The question of substantial limitation in one's ability to work turns on whether a broad range of jobs existed which plaintiff *could not* perform, rather than whether there remained a broad range of jobs she still *could* perform. *See* maj. op. at 372; 29 C.F.R. § 1630.2(j)(2). In fact, the sentence reflects the same erroneous reasoning applied by the district court to which the EEOC strenuously objected. The majority

ostensibly did not rely on this reasoning in reaching its decision, and dismissed the EEOC's objection as "too narrow[ ]" a reading of the district court's opinion. Maj. op. at 372. It appears from this sentence, however, that the majority continues to be influenced by the faulty reasoning of the district court.

Third, the final sentence suggests that plaintiff's claim is fatally flawed because her work at Toyota was not medium or heavy work, so she could not be regarded as a "qualified individual" with respect to medium and heavy work. This curious statement is flawed for two reasons. First, the question of whether plaintiff was a "qualified individual" under the statute is not before the court. The issue was never briefed or decided below and is not properly before this court. Second, the question of whether one is a "qualified individual" is directed at whether one can perform the essential functions of the particular job being sought, not the jobs which one's impairment make it impossible to do. *See* 42 U.S.C. § 12111(8) ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). The question of whether one is a "qualified individual" is entirely independent of the determination of whether one has a disability.

Finally, the majority suggests in the last sentence of the paragraph that plaintiff's claim is flawed because "she made no showing that she ever was able to perform medium or heavy work." Plaintiff has no obligation to prove that she once was able to do the job but became unable as a result of her work at Toyota. This is not a workers' compensation claim. As the legislative history makes clear, "[t]he cause of a disability is always irrelevant to the determination of disability." H.R.Rep. No. 101–485(III), at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 451–52. Whether plaintiff's disability is caused by birth defect, injury or disease, the question at issue is whether or not she is disabled, that is, substantially limited in a major life activity as compared with an average person. If she is disabled and if she is otherwise qualified to do a particular job, an employer is statutorily proscribed from discriminating against her on the basis of her disability.

Taken together, the reasoning of the quoted paragraph conflicts with the statute, the posture of the case, and the prior reasoning of the majority.

## II.

By its opinion, the majority effectively nullifies the ADA insofar as it applies to claims based on impairments to an individual's ability to work. In addition to being factually flawed, the opinion is at odds with the statutory history, the interpretations of the regulatory agency and the case law. Accordingly, I respectfully dissent.