**Harrison C. LANCE, Jr., Plaintiff,**

v.

**UNIVERSITY OF TENNESSEE, Defendant.**

**No. 3:98–CV–037.**

United States District Court, E.D. Tennessee.

Jan. 29, 1999.

Stephen T. Hyder, Knoxville, TN, for Plaintiff.

Ronald C. Leadbetter, University of Tennessee Office of General Counsel, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

This is an action brought pursuant to the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12111, *et seq.* Plaintiff alleges that he was terminated from his job as a carpenter because of a disability or his record of disability. Defendant has moved for summary judgment contending that (1) plaintiff had no "disability" within the meaning of the Act, and (2) plaintiff suggested no "reasonable accommodation" by which the defendant could have accommodated his alleged disability [Court File # 12]. For the reasons that follow, the motion will be denied.

I.

### Factual Background

The following factual allegations are considered in the light most favorable to the plaintiff.

Plaintiff Harrison Lance was hired by the University of Tennessee as a carpenter in May 1985. Initially his job involved general campus maintenance. However, in the last two years of his University employment, his job entailed only light carpentry, such as hanging pictures, fixing signs, and other less strenuous tasks performed with a partner.

In May 1995, plaintiff requested leave from the University due to an attack of pancreatitis. He was granted leave for a 12–week period beginning May 23, 1995, pursuant to the requirements of the Family and Medical Leave Act. He was approved by his physician to return to work on August 10, 1995.

However, on July 29, 1995, while plaintiff was still on leave, he suffered a severe hand injury while operating a skill saw. The result of this injury was that his little finger of his left hand was completely severed, and surgical reattachment was not possible. He also suffered severe tendon and nerve damages to the fourth finger, which was almost completely severed.

Approximately one week after this accident, plaintiff contacted his supervisor, George Bull, to discuss returning to work.

Bull advised plaintiff that when he was totally released by his physician he could return.

On August 14, 1995, plaintiff delivered to Bull a note from his physician, Dr. Samuel Marcy, advising that plaintiff was not released to return to work at that time. The following day, Bull sent plaintiff a letter stating that unless he could return to work without restrictions by August 22, 1995, his position would have to be filled by someone else. After receiving this letter, following the advice of his doctor, the plaintiff asked for additional leave from work.

On August 17, 1995, following another conversation with Bull, plaintiff received a letter from John Parker, Executive Director of the Physical Plant, informing him that he would not be required to return to work by August 22, 1995, as previously instructed, but that he should "provide a doctor's statement that identifies the disability in question, its relationship to your ability to do your carpenter job, and any suggestions the doctor has concerning possible accommodations necessary." By letter dated August 31, 1995, Dr. Marcy advised Parker:

> I have been treating H. Charles Lance of Norris Freeway for a very severe injury to his left hand which occurred on 7–29–95. This is a devastating hand injury with a traumatic amputation of the little finger, major nerve, vessel and tendon injury to ring, long and index fingers, his pain has finally abated after four weeks. He is in therapy but has no ability to do carpenter type work at this time.
>
> It is probably going to be three months from the date of injury before he is able to return to active use of his hand in a carpentry position. *Possibly* as early as next October he would be able to return to work. But it would *probably* be more like early November before his hand is mobile and strong enough to be a helping hand for a carpenter. He will have a great deal of cold intolerance for the winter. He is previously undergoing Occupational Therapy. His ability to work as a driver is not safe now in an industrial situation. He *might* be able to do that at the end of September or the first of October.
>
> I certainly can't guarantee that he will ever be able to do full carpenter work at any time in the future however.

Dr. Marcy would later admit that at the time he wrote the above letter he assumed that the plaintiff was a full duty carpenter and was unaware that plaintiff only performed light carpentry work with the assistance of a partner.

By letter dated August 30, 1995, Bull wrote the plaintiff, advising him of the termination of his employment:

> Dear Mr. Lance:
>
> We have talked with Dr. Marcy's office and have been informed that you are to continue to be off work until at least September 28, 1995, at which time a follow-up exam may determine your possible return to work.
>
> You have exhausted all available paid and unpaid leave and any possible return to work is well outside the boundaries of additional unpaid leave we could provide. Since this department is already severely understaffed, we are not in a position to grant any addition time off from work. Therefore, your employment with the Physical Plant at The University of Tennessee is terminated effective Thursday, August 31, 1995.

.    .    .    .    .

At the time of plaintiff's termination he had been on leave without pay for approximately three months and had exhausted his previously approved 12–weeks of Family Medical leave. On September 25, 1995, plaintiff presented the defendant with a release from Dr. Marcy stating:

> May return to work 9/25/95. Light duty. Right hand grip only. No right hand lifting or gripping. Ok to drive.

The plaintiff also presented an explanation from Dr. Marcy of his previous assessment of the plaintiff's ability to work:

> [Plaintiff] is very distraught about having been terminated at UT. I understood and he told me that he was a carpenter. Today, he points out that his job was in maintenance carpentry, and he primarily adjusted doors, hung bulletin boards, and pictures. He did this as a two-man team. Since he hurt himself doing full carpentry work, using a skill saw and helping a friend build something, I was under the impression that that was the type of employment that he has.... Mr. Lance has achieved my most optimistic goal of being able to return to a driving type of work and limited use of the left hand work by late September, which we are in now. I think that will be fine for him to begin at this time....

## II.

### Summary Judgment Standards

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence *of some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of trial. *Catrett,* 477 U.S. at 322, 106 S.Ct. 2548.

## III.

### The Americans with Disabilities Act

The ADA prohibits an employer from discriminating against "a qualified individual with a disability" because of the disability. 42 U.S.C. § 12112(a). The term "disability" with respect to an individual refers to:

> (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) A record of such an impairment; or
>
> (C) Being regarded as having such an impairment.

In order to establish a case under the ADA, a plaintiff must prove that

> (1) [he] is a disabled person within the meaning of the Act,
>
> (2) that [he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation, and
>
> (3) that [he] suffered an adverse employment decision because of [his] disability.

*McKay v. Toyota Motor Manufacturing, USA, Inc.,* 110 F.3d 369, 371 (6th Cir.

1997). 29 C.F.R. § 1630.2(*o*)(2) explains that

> (2) Reasonable accommodation may include but is not limited to
>
> .    .    .    .    .
>
> (ii) Job restructuring; part-time or modified work schedule; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and *other similar accommodations for individuals with disabilities* [emphasis added].

The Appendix to 29 C.F.R. Part 1630 regarding § 1630.2(o) explains that

> Part 1630 lists the examples, specified in title I of the ADA, of the most common types of accommodation that an employer or other covered entity may be required to provide. There are any number of other specific accommodations that may be appropriate for particular situations but are not specifically mentioned in this listing. This listing is not intended to be exhaustive of accommodation possibilities. For example, other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment, ...

The United States Court of Appeals for the Sixth Circuit has held that

> [i]n cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issue will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved through direct, objective evidence. 42 U.S.C. § 12112(b)(5)(A) states that an employer has "discriminated" against a disabled individual by:
>
> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.
>
> The language of this provision makes it clear that the employer has the burden of persuasion on whether an accommodation would impose an undue hardship. However, the disabled individual bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable. . . .

*Monette v. Electronic Data Systems Corporation,* 90 F.3d 1173, 1183 (6th Cir.1996).

## IV.

### Analysis

■ Initially, defendant contends that plaintiff has failed to show evidence of having a "disability" within the meaning of the ADA. I disagree. Questions of material fact remain to be determined with regard to whether the plaintiff has a physical impairment that substantially limits one or more of his major life activities. Even if no such question remained, a question of fact remains with regard to whether plaintiff has a record of such an impairment or was regarded by UT of having such an impairment. 42 U.S.C. § 12102(2).

■ Additionally, the defendant contends that plaintiff has failed to identify a reasonable accommodation that would allow him to perform the essential functions of his job. However, as 29 C.F.R. Part 1630 explains, accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment. There is evidence in the record that plaintiff was re-

questing such additional unpaid leave when Dr. Marcy's first letter explaining the plaintiff's condition was sent to the defendant. Certainly defendant was aware that plaintiff was requesting such an accommodation because it explained to the plaintiff in his termination letter that it was not in a position to grant "any additional time off from work." Defendant knew that the plaintiff was seeking such an accommodation but determined that it could not provide one. It also apparently made this determination without attempting to obtain more information from Dr. Marcy which might explain exactly what accommodation the plaintiff would need. Under the circumstances, I am of the opinion that plaintiff has raised a question of material fact with respect to whether a reasonable accommodation might have been provided him.

## V.

### Conclusion

In light of the foregoing, defendant's motion for summary judgment [Court File # 12] will be denied.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that defendant's motion for summary judgment [Court File # 12] is DENIED.