Edward A. **HUNTER**, Appellant,

v.

**NASH FINCH COMPANY**, Respondent.

No. C5–92–2171.

Court of Appeals of Minnesota.

April 20, 1993.

Ronald W. Brandenburg, Tracy Bowe, Hughes, Thoreen, Mathews & Knapp, St. Cloud, for appellant.

Laurence M. Ulrich, Oppenheimer, Wolff & Donnelly, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and FORSBERG and FOLEY *, JJ.

## OPINION

PARKER, Judge.

Edward Hunter appeals from summary judgment entered in favor of Nash Finch Company on his claim of disability discrimination under the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1(2), (6) (1990). We reverse and remand.

## FACTS

Appellant Edward Hunter was hired to work in respondent Nash Finch Company's warehouse facility in August 1989. During his initial employment interview, Hunter informed the warehouse supervisor that he was missing two fingers of his left hand, and the supervisor responded by stating that "it's against my better judgment to hire you." Hunter's missing fingers were the result of an employment-related accident which occurred in 1981 while he was employed as a printer in South Carolina. He received worker's compensation for the injury.

Hunter began working for Nash Finch as a "lumper," a person who loads and unloads trucks. Several weeks later, he was promoted to a position as a "picker." A picker locates the items necessary to fill customer orders and loads them onto trucks for delivery. The duties of a picker are the most taxing of all positions in the warehouse.

While working as a picker, Hunter began to experience pain in his right hand. He complained to his supervisors on several occasions about the difficulties he was encountering and requested several accommodations. He asked not to pick in the freezer because his left hand had problems with the cold. Nash Finch granted the request. Hunter then requested a reduction of the quota requirements for his picking job in order to accommodate his disabled left hand so he would not be forced to overcompensate with his right hand. His request was denied. He asked to be reassigned to a half-time printer/half-time warehouse position. The request was denied, and another employee was given the position. He then requested a transfer to a lighter-duty position in produce receiving, but this request was also denied and the position assigned to another employee.

Hunter was ultimately diagnosed as suffering from carpal tunnel syndrome in his right hand and wrist. He was restricted from repetitive lifting and was required to wear a wrist splint while working. Hunter requested to be assigned to the sanitation crew. Five months from when he first began picking and started experiencing physical problems, Nash Finch accommodated his request.

In April 1990, two days after he was transferred to the sanitation crew, Hunter was assigned to work in the freezer, scraping labels off the floor. Nash Finch knew that Hunter had previously experienced problems with his left hand when working in the freezer as a picker. After working for approximately five hours, his right arm became numb up to his elbow. When he

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

informed his supervisor that he could not continue to perform this task, his supervisor stated that he "would not have hired him if he had known he was a cripple."

Hunter subsequently underwent carpal tunnel release surgery and was on medical leave from April to July 1990. He collected worker's compensation during this time.

On July 11, 1990, Hunter returned to work without restriction. He was reassigned to a position as a part-time lumper. According to Nash Finch, Hunter quit because his hand became quite painful during his first day back on the job. Hunter, however, contends he was constructively discharged due to a lack of work. He received unemployment compensation benefits on the basis of constructive discharge.

In August 1990 Hunter filed a disability discrimination charge with the Minnesota Department of Human Rights. He alleged that the two amputated fingers on his left hand constituted a disability and that Nash Finch's failure to accommodate this disability constituted discrimination. The Department dismissed his complaint, holding that under the supreme court's ruling in *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180 (Minn. 1989), he was precluded from bringing a discrimination claim because he had already received worker's compensation benefits for his injuries.

In July 1991 Hunter commenced a disability discrimination action in district court, claiming compensatory damages including loss of past and future earnings and benefits, mental and emotional anguish and embarrassment, treble damages, attorney fees, costs, and punitive damages. Nash Finch moved for, and was granted, summary judgment on the basis of *Karst*. This appeal followed.

## ISSUE

Did the trial court err in holding the exclusivity provision of the Minnesota Workers' Compensation Act, as applied by the Minnesota Supreme Court in *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180 (Minn. 1989), precluded Hunter from initiating a disability discrimination claim under the Minnesota Human Rights Act?

## DISCUSSION

■ On appeal from summary judgment, this court must determine "(1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law." *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In conducting its review, this court must view the evidence in the light most favorable to the party opposing the motion. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). The only question before us is whether the trial court erred in its application of the law. Therefore, this court is not bound by the decision of the lower court. *County of Lake v. Courtney*, 451 N.W.2d 338, 341 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

■ Hunter contends the trial court erred in holding that the exclusive remedy provision of the Workers' Compensation Act (WCA) precluded him from bringing a separate discrimination action under the Minnesota Human Rights Act (MHRA) for failure to accommodate a pre-existing disability. We agree.

The exclusive remedy provision of the Minnesota Workers' Compensation Act provides, in pertinent part:

The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death.

Minn.Stat. § 176.031 (1990).

The exclusive remedy provision

is part of the quid pro quo of the workers' compensation scheme in which the employer assumes liability for work-related injuries without fault in exchange for being relieved of liability for certain kinds of actions and the prospect of large damage verdicts.

*Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 183–84 (Minn.1989).

The issue before the Minnesota Supreme Court in *Karst* was whether the exclusive

remedy provision of the WCA precluded a discrimination action by a disabled worker against his former employer where he became disabled as a result of work-related injuries, and the former employer refused to rehire the individual due to the disability. *Id.* at 181. Karst was a 55–year–old warehouseman who suffered a work-related injury to his shoulder in 1978 and received workers' compensation for the injury. *Id.* at 182. In 1980 he returned to work and in 1984 suffered a second injury to the same shoulder. He again applied for and received workers' compensation benefits. *Id.* His physician determined that he could return to work, but with some work restrictions. However, the employer made the decision not to rehire him. *Id.* at 183. The supreme court posed the issue presented as whether "the Minnesota Workers' Compensation Act provide[s] a remedy for disability discrimination." *Id.* at 184.

Under the WCA, the employer has the discretion not to rehire an employee with work restrictions, because that employee has been compensated under the WCA and will continue to be compensated if the employer chooses not to rehire him. *Id.* at 186. The supreme court determined the injury sustained by Karst as a result of the company's refusal to rehire him was compensated under the WCA. *Id.* The WCA provided him with a remedy for discriminatory refusal to rehire by requiring the employer to pay additional benefits because it chose not to rehire the injured employee.[1] *See* Minn.Stat. § 176.101 (1990).

The facts of this care are clearly distinguishable; unlike the employee in *Karst,* the disability upon which Hunter's claim is based resulted from a workplace injury at a previous employer, which left his left hand functionally and cosmetically impaired. He was hired by Nash Finch with this disability eight years after the original injury. Nash Finch hired Hunter despite

its serious reservations about his disability. Hunter does not claim a discriminatory refusal to rehire. Indeed, he had received a statutory supplement to his benefits for the employer's refusal to rehire.

Hunter's claim of discrimination is not based on the carpal tunnel *injury* to his right hand. It is Nash Finch's refusal to accommodate Hunter reasonably to other positions of employment because of his pre-existing disability that forms the basis of his discrimination action. Nash Finch repeatedly failed to accommodate him on the job for the prior disability to his left hand:

* Hunter was moved to the most taxing job in the warehouse.
* His request for a reduction of the quota requirements for his picking job was denied.
* His request to be reassigned to a half-time printer/half-time warehouse position was denied, and the position was given to another employee.
* His request for a transfer to a lighter-duty position in produce receiving was denied, and the position was given to another employee.
* His request for a transfer to the sanitation crew was granted; however, he was assigned to work in the freezer despite Nash Finch's knowledge that he had previously experienced problems with his left hand when working in the freezer as a picker.

We conclude that Hunter's discrimination claim is separate and distinct from his worker's compensation claim. The failure to accommodate his disability gave rise to the discrimination claim months before he developed carpal tunnel syndrome, and the injuries sustained from this discrimination can be separated from the subsequent physical injury. More importantly, the WCA does not provide a remedy for these Human Rights Act injuries. The separate

1. Minn.Stat. § 176.101, subd. 3e(b), provides that temporary total compensation benefits shall cease, and the employee will receive impairment compensation, if the employer gives the employee a suitable job offer. Section 176.-101, subd. 3p, provides that an employe will receive economic recovery compensation if no suitable job offer is made, and section 176.101, subd. 3t, provides that the economic recovery

compensation will be at least 120 percent of the impairment compensation.

The supreme court in *Karst* found persuasive the reasoning of Wisconsin courts which have resolved similar issues. *See Schachtner v. Department of Indus., Labor, and Human Relations,* 144 Wis.2d 1, 422 N.W.2d 906 (Ct.App. 1988) (workers' compensation law precluded a handicap discrimination action).

and distinct injuries for which Hunter may be able to recover are actual compensatory damages, mental anguish, punitive damages, and attorney fees. *See* Minn.Stat. § 363.071, subd. 2 (1990).

Extending the holding in *Karst* as dispositive of this case would be effectually to deny the provisions of the MHRA to an individual whose disability resulted from an injury at a previous workplace and whose current employer denied him reasonable accommodation. Although we recognize that Nash Finch may be exposed to increased financial burden if it is required to defend against this claim in addition to the WCA claim, such increased exposure is not the result of erosion of the WCA's exclusivity provisions. Rather, we believe it occurs because such provisions do not apply to altogether different damages for which no remedy is provided under the WCA. Viewing the facts in the light most favorable to the party opposing summary judgment, Nash Finch's failure to accommodate Hunter's disability could be found to have led to his separate and distinct damages and deserving of separate scrutiny under the MHRA. The exclusive remedy provision of the WCA does not preclude him from bringing this separate discrimination action under the MHRA.

## DECISION

The trial court erred in granting summary judgment in favor of respondent employer on the basis of the supreme court's ruling in *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180 (Minn.1989).

**Reversed and remanded.**