**Pamela McKAY, Plaintiff,**

v.

**TOYOTA MOTOR MANUFACTURING, U.S.A., INC., Defendant.**

Civ. A. No. 93–492.

United States District Court,
E.D. Kentucky,
at Lexington.

Feb. 27, 1995.

Thomas W. Moak, Stumbo, Bowling & Barber, Prestonsburg, KY, for plaintiff.

John Armstrong West, Greenebaum, Doll & McDonald, Lexington, KY, for defendant.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court upon the motion of the defendant, Toyota Motor Manufacturing, U.S.A., Inc. ("TMM"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, Pamela McKay, filed this action on December 14, 1993. In her complaint, McKay alleges that her employment with TMM, a manufacturer of automobiles, was terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Kentucky Equal Opportunities Act, KRS 207.130 *et seq.*, and the Kentucky Civil Rights Act, KRS Chapter 344. McKay's complaint also asserts state law claims for wrongful discharge and breach of an alleged employment contract.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact for trial and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file and draw reasonable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. To sustain this burden, she may not rest on the mere allegations of her pleadings. Instead, she must set forth specific facts showing that there is a genuine issue for trial. *Potter's Med. Center v. City Hosp. Ass'n.*, 800 F.2d 568 (6th Cir.1986). Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). With these principles in mind, the Court turns to an examination of the facts.

## II. FACTS

McKay began working for TMM on March 9, 1992 in the body weld division of TMM's Georgetown, Kentucky plant. Within a few weeks, McKay began complaining of pain in

both of her hands, forearms and wrists, as well as numbness and tingling. Initially, McKay was referred to a physician employed by TMM and sent home to rest. Although McKay returned to work after several days, the pain and swelling returned and she was then referred to Dr. Tsu–Min Tsai, an orthopedic surgeon, who diagnosed McKay with carpal tunnel syndrome caused by her work. McKay was given medication, splints for her arm and wrist, and physical therapy. Dr. Tsai restricted McKay's work by limiting the amount of weight she could lift and requiring that she not use vibrating tools.

Over the next year, McKay continued to work for TMM as often as she was able in a variety of positions. She continued to be treated by a number of physicians and physical therapists, all who restricted her from performing work using vibratory tools and limited the amount of weight she could lift. McKay alleges that although she requested employment in several vacant light or medium duty positions, TMM declined her requests. Furthermore, McKay claims that TMM continually refused to provide her with work conforming to the restrictions placed upon the use of her hands and arms. On the other hand, TMM alleges that it engaged in the following efforts to help McKay: granting her a medical leave of absence; placing her in modified light duty jobs; placing her in two rehabilitative work conditioning programs; referring her to TMM's job placement committee; extending her initial evaluation period because of her medical leave of absence; providing her with several work reintroduction periods; and approving her transfer to the job of her choice. However, as the result of allegedly excessive absences from work, McKay's employment with TMM was terminated on June 7, 1993.

### III. THE ADA

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a

record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). For an impairment to "substantially limit" one or more of these major life activities, the individual must be unable to perform, or be significantly limited in the ability to perform, an activity compared to an "average person in the general population." *Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act* at p. II–4. *See also,* 29 C.F.R. § 1630.2(j)

### IV. McKAY IS NOT DISABLED UNDER THE ADA

In support of its motion for summary judgment, TMM argues that McKay is not a "qualified individual with a disability" because she does not have a physical or mental impairment which substantially limits one or more of the major life activities. On the other hand, McKay argues that she is a "qualified individual" because she is substantially limited in the major life activities of "working" and "caring for oneself."

### A. McKAY IS NOT SUBSTANTIALLY LIMITED IN THE MAJOR LIFE ACTIVITY OF WORKING

The ADA regulations provide that when a court is determining whether an impairment substantially limits a major life activity, it should consider the following factors: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, the expected permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Furthermore, when a court is determining whether an impairment substantially limits the major life activity of working, it may consider the following additional factors:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impair-

ment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* at § 1630.2(j)(3).

In order to show that she is substantially limited in the major life activity of working, McKay must prove that she is "significantly restricted in ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

In support of her argument that she is substantially limited in the major life activity of working, McKay relies on the testimony of two orthopedic surgeons, Dr. Tsu–Min Tsai and Dr. Mark Einbecker, and one vocational expert, Dr. Ralph Martin Crystal. According to McKay, Dr. Tsai's testimony supports her claim that she is a qualified individual with a disability because: (1) he diagnosed her with carpal tunnel syndrome; (2) he determined that she has a 10% disability in the right arm and a 6% permanent impairment to her body as a whole; and (3) he placed McKay under work restrictions following her injury. Next, McKay offers the testimony of Dr. Einbecker, who also diagnosed McKay with carpal tunnel syndrome and prescribed work restrictions. Finally, McKay relies on Dr. Crystal's statement that McKay would be someone who would be considered to have a disability under the ADA.

■ At the time of her termination from TMM, McKay was a 24 year old college graduate, working on earning her teaching certificate. Given her educational back-

ground and age, she is qualified for numerous positions "not utilizing" the skills she learned as an automobile assembler. Merely because she can no longer perform repetitive factory work does not render her significantly limited under the ADA. In a similar case, *Bolton v. Scrivner, Inc.*, 836 F.Supp. 783 (W.D.Okla.1993), *aff'd*, 36 F.3d 939 (10th Cir. 1994), the plaintiff failed to show a disability under the ADA, even though work restrictions prevented him from returning to his former job, where plaintiff failed to show that such limitations restricted his overall employment opportunities. McKay has not established that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes as compared to similarly-situated persons with comparable training, skills and abilities. Therefore, she is not substantially limited in the major life activity of working.

**B. McKAY IS NOT SUBSTANTIALLY LIMITED IN THE MAJOR LIFE ACTIVITY OF CARING FOR ONESELF**

■ McKay is also not substantially limited in the major life activity of caring for herself. According to McKay, her condition does not substantially limit her ability to perform personal hygiene tasks or most household functions. In fact, the only household function McKay claims to be substantially limited in is mopping. Merely being limited in the ability to perform housework such as mopping does not constitute a substantial limitation in the ability to care for oneself.

**C. McKAY HAS NO RECORD OF AN IMPAIRMENT AND HAS NOT BEEN REGARDED AS HAVING SUCH AN IMPAIRMENT**

■ Under the definition of disability in the ADA, a person who has a record of an impairment that substantially limits one or more major life activities is also accorded protection. 29 C.F.R. § 1630.2(g)(2). Having a record of an impairment means that one "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." McKay has set forth no facts indicating that she has a record of an impairment. The ADA also protects individ-

uals who are "regarded" as disabled. To prevail under the "regarded as" section of the definition of disability, McKay must show that TMM perceived her as disabled. 29 C.F.R. § 1630.2(k). *See also Smaw v. Com. of Va. Dept. of State Police,* 862 F.Supp. 1469, 1475 (E.D.Va.1994). McKay relies on the statement of Dr. Crystal that McKay was "perceived as impaired." However, Dr. Crystal was unable to support this statement and such conclusory testimony fails to demonstrate that TMM regarded McKay as disabled.

### D. INDIVIDUALS WITH CARPAL TUNNEL SYNDROME ARE NOT DISABLED AS A MATTER OF LAW UNDER THE ADA

McKay cites *Hunter v. Nash Finch Co.,* 498 N.W.2d 759, 2 A.D. Cases 689, 691 (Minn. 1993), for the proposition that individuals with carpal tunnel injury are considered disabled under the ADA. This is simply not true. In *Nash Finch,* the plaintiff brought the action under the Minnesota Human Rights Act, not the ADA, and the court expressly noted that "Hunter's claim of discrimination [was] not based on carpel tunnel injury to his right hand." *Id.* A mere diagnosis of carpel tunnel syndrome is insufficient to raise a genuine issue of material fact.

### E. TMM IS ENTITLED TO SUMMARY JUDGMENT ON McKAY'S ADA CLAIM

McKay failed to raise a genuine issue of fact as to whether she is substantially limited in one or more major life activity, has a record of an impairment, or is regarded as having an impairment. Therefore, she is not entitled to protection under the ADA, and TMM is entitled to summary judgment on McKay's ADA claim.

### V. McKAY'S STATE LAW CLAIMS ARE DISMISSED

██ McKay's complaint asserts not only ADA claims, but also Kentucky statutory and common law claims. However, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over McKay's state law claims since the claims over which the Court had original jurisdiction are being dismissed.

### VI. CONCLUSION

Accordingly, the Court hereby ORDERS:

(1) TMM's motion for summary judgment [docket entry 42] is GRANTED, and summary judgment will be entered contemporaneously with this opinion and order in favor of TMM; and

(2) the jury trial of Tuesday, March 7, 1995 is SET ASIDE.

### *SUMMARY JUDGMENT*

In accordance with the opinion and order entered contemporaneously with this summary judgment, the Court hereby ORDERS AND ADJUDGES:

(1) summary judgment is entered in favor of the defendant, Toyota Motor Manufacturing, U.S.A., Inc.;

(2) this matter is DISMISSED WITH PREJUDICE;

(3) this judgment is final and appealable, and no just cause for delay exists; and

(4) this matter is STRICKEN from the active docket.