**Randle BRANCH**

v.

**BRIDGESTONE/FIRESTONE, INC.**

**No. 3–99–1011.**

United States District Court, M.D. Tennessee, Nashville Division.

July 31, 2000.

Donald D. Zuccarello, Nashville, TN, for Randle Branch, plaintiff.

Stephen W. Grace, Kathryn S. Crenshaw, Waller, Lansden, Dortch & Davis, Nashville, TN, for Bridgestone/Firestone, Inc., defendant.

## MEMORANDUM

WISEMAN, Senior District Judge.

Plaintiff Randle Branch alleges that Defendant Bridgestone/Firestone, Inc. ("Bridgestone") fired him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Bridgestone moves for summary judgment. Based on the evidence presented, no reasonable jury could determine either that Branch is disabled as defined by the ADA or that he has the ability to perform the essential functions of an alternative job if Bridgestone had offered him such a job as a reasonable accommodation. The Defendant's Motion for Summary Judgment is therefore GRANTED.

### Facts

The following facts are not in dispute and have been admitted by Branch.

In October, 1988, Branch began working at Bridgestone, a tire manufacturer, in various union-represented laborer positions, all of which required using heavy tools and rolling tires. Branch's union negotiated a Collective Bargaining Agreement that set minimum pace requirements. Bridgestone felt that such pace requirements were necessary in the competitive tire industry, and in 1992, it implemented a Low Performer Program to address the problems of those who had the ability to perform at the contractually required pace but who willfully refused or failed to do so.

In 1998, Branch voluntarily transferred from a tire inspecting position to a tire builder position. He was required by his union's agreement to build eighty-three tires for each twelve-hour shift he worked. Branch admits that he was aware of the eighty-three tires per shift requirement but that he never built more than sixty tires during any shift he ever worked as a tire builder.

Branch now asserts that he has carpal tunnel syndrome. He admits that his condition does not affect his ability to care for himself, walk, eat, learn, or talk. He also admits that it does not limit his ability to perform various jobs he held before his asserted carpal tunnel syndrome arose. These jobs include working as a hotel or retail store manager, sales clerk, real estate agent, administrative assistant, behavioral therapist, or driver. He does contend that his carpal tunnel syndrome prevents him from performing repetitive work with power tools, lifting and pushing tires, and driving for more than two and one-half hours at a time.

While at Bridgestone, Branch's condition was diagnosed as tendinitis; it was not deemed carpal tunnel syndrome until after his termination. No physician ever placed Branch on medical restrictions or limitations while he was at Bridgestone. No one ever called Branch derogatory names related to his condition or inability/refusal to meet the minimum pace requirements. The only accommodation requested by Branch was a transfer to a new position, which would have required bumping other Bridgestone employees from their positions to create a vacancy.

According to the Collective Bargaining Agreement, Branch had to remain in his tire builder position for one year before he could transfer, unless he was physically unable to perform the job. Branch argues that he was physically unable to perform the job and should have been able to transfer. As part of the Low Performer Program, Bridgestone reviewed Branch's performance and had its time-study engineers study his performance. Bridgestone counseled Branch for his failure to meet the minimum pace requirements. After concluding that Branch had the ability to perform his job but simply refused to do so, Bridgestone terminated Branch. Through his union, Branch challenged Bridgestone's conclusion that he was not physically disabled. The issue was arbitrated and Branch lost.

Only the following facts are in dispute.

Bridgestone alleges that prior to termination, Branch never told any Bridgestone employee about the scope or extent of his

physical limitations, and that Bridgestone therefore never regarded Branch as disabled or physically impaired, but believed at all times that he could perform the duties of a tire builder. Branch asserts that he informed his supervisors of his condition.

Bridgestone asserts that it fired Branch as part of the Low Performer Program. Branch alleges he was fired in violation of the ADA.

### Basis for Summary Judgment

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the purposes of summary judgment, the Court must view all facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir.1990). The Court must determine whether sufficient evidence has been presented to render an issue of fact a proper jury question and must not weigh the evidence, assess the credibility of the witnesses, or determine the truth of any disputed matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A party seeking relief under the ADA must prove (1) he is disabled within the meaning of the ADA, (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) his employer discharged him solely because of his disability. *McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 371 (6th Cir.1997); *Monette v. Electronic Data Systems Corporation*, 90 F.3d 1173, 1178 (6th Cir.1996).

Bridgestone requests summary judgment for the following reasons: Branch has not established that he has a disability entitled to ADA protection; even if he has a disability, his requested accommodation was not "reasonable" as a matter of law; Branch cannot sustain an action for a failure to accommodate because he never informed Bridgestone of the scope of his limitations or the restrictions caused by his alleged disability; and Bridgestone could not have fired Branch because of his alleged disability because Bridgestone had no knowledge of any limitation caused by the alleged disability.

### Could a reasonable jury find that Branch is disabled under the ADA?

■ Under the ADA, "disability" means either (1) having a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such an impairment, or (3) being regarded by one's employer as having such an impairment. 42 U.S.C. § 12102.

### Substantially Limited in a Major Life Activity

■ The regulations enacted by the EEOC pursuant to the ADA define "substantially limits" as a total inability, or a substantial restriction upon an individual's ability, to perform a major life activity, in terms of condition, manner, or duration, that the average person in the general population can perform. 29 C.F.R. § 1630.2(j)(1). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Branch admits that his carpal tunnel syndrome does not affect his ability to care for himself, walk, breathe, eat, learn, or talk. His main argument is that he is limited in the major life activity of working.[1]

---

**1.** Defendant Bridgestone argues that working should not be considered a major life activity.

Citing to a recent Supreme Court case, Bridgestone notes that even though Congress

The following factors are relevant in determining whether an individual is substantially limited in a major life activity: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term, or the expected permanent or long term impact resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). With respect to the life activity of working, other factors are also relevant, including: "the geographical area to which the individual has access; the job from which the individual has been disqualified ... and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or the job from which the individual has been disqualified ... and the number and types of jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii); *Doren v. Battle Creek Health System,* 187 F.3d 595, 598 (6th Cir.1999).

■ To be disabled in the major life activity of working, the individual must be unable to perform a class or broad range of jobs. 29 C.F.R. § 1630.2(j)(3)(i); *Williams v. Toyota Motor Manufacturing,* 2000 WL 913371, at *2 (6th Cir.2000). He must be "precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450, 468 (1999); *Sullivan v. River Valley School District,* 197 F.3d 804, 811 (6th Cir.1999) ("[A] mere deterioration in performance at a single, particular job cannot constitute a disability."). Ultimately, Branch must provide evidence that would allow a reasonable jury to conclude that his ability to work at a broad range of jobs is significantly limited as compared to an average person in the general population.

■ Based on his admissions and deposition, Branch is not substantially limited in the major life activity of working. Branch's only assertion is that his condition prevents him from performing repetitive work with power tools, lifting and pushing tires, and driving for more than two and one-half hours at one time. Branch admits that no physician ever placed him on work restrictions or limitations of any kind while at Bridgestone.

Ruling on a similar motion for summary judgment, a district court in Kentucky

gave several agencies the power to enact regulations for various parts of the ADA, Congress has not given any agency the authority to issue regulations with regards to the generally applicable provisions of the ADA, such as the definitional section. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450, 460 (1999). Because the respective parties before it accepted the regulations as valid, the Supreme Court did not decide what level of deference should be given the EEOC's regulations dealing with the definitional section of the ADA. However, as the Court recognized,

there may be some conceptual difficulty in defining "major life activities" to include work, for it seems "to argue in a circle to say that if one is excluded, for instance, by

reason [of an impairment, from working with others] ... then that exclusion constitutes an impairment when the question you're asking is, whether the exclusion itself is by reason of handicap." ... Indeed even the EEOC has expressed reluctance to define "major life activities" to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only,* "if an individual is not substantially limited with respect to *any other* major life activity."

(citations omitted). Nevertheless, after *Sutton* the Sixth Circuit has continued to recognize working as a major life activity. *Sullivan v. River Valley School District,* 197 F.3d 804, 811 (6th Cir.1999) ("Under the Act, working qualifies as a 'major life activity.' ").

found an automobile assembler with carpal tunnel syndrome was not substantially limited in the major life activity of working. *McKay v. Toyota Motor Mfg.*, 878 F.Supp. 1012, 1015 (E.D.Ky.1995). The court noted that even though she had doctors who had placed her on workplace restrictions, the assembler, given her age and educational background, was qualified for numerous positions not utilizing the skills of automobile assembler. *Id.* The inability to perform repetitive factory work alone did not render her significantly limited under the ADA. *Id.* The Sixth Circuit upheld the decision, explaining that McKay's condition did not significantly restrict her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. *McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 373 (6th Cir.1997).

Branch seeks to distinguish *McKay* on the grounds that he is fifty-two years old, whereas McKay was only twenty-three and could therefore more easily enter the job market. He also asserts that McKay worked for Toyota only a year before being fired, whereas Branch worked almost eleven years for Bridgestone. Hence, he claims any other jobs skills he once possessed have been "dulled by years of factory work."

■■ Branch would seem to be limited in performing the specific job of tire builder, but has not presented any evidence that his condition prevents him from performing a substantial class or broad range of jobs. Working, as a major life activity, must be defined broadly with reference to more than any one specific job, and a consideration of the plaintiff's vocational abilities, as performed in *McKay*, is therefore relevant to determining whether he is disabled. Branch admits that his condition does not limit his ability to perform prior jobs he has held, including hotel or retail store manager, sales clerk, real estate agent, administrative assistant, behavioral therapist, or driver (if driving less than

two and one-half hours at a time). He has a bachelor's degree in psychology, a master's degree in industrial studies, military training, and is bilingual. He also manages his farm, which consists of feeding animals, using a chain saw or weed-eater for up to thirty minutes at a time, repairing fences, and other odds and ends.

■ Branch has not presented any details regarding his current abilities or the extent of any impairment caused by his carpal tunnel syndrome. He has presented no vocational testimony that his condition restricts his ability to work. He does not even point to any medical testimony other than the diagnosis that would indicate he is excluded from a broad class or range of jobs. The only way one could determine that Branch is substantially limited in the life activity of working is to conclude that he must be disabled because he has carpal tunnel syndrome and has never fulfilled the eighty-three tire minimum. But even such a conclusion would indicate only that Branch is limited in his capacity as a tire builder, not that he is limited as to a broad range of jobs. Furthermore, neither his age nor the length of time he has worked for Bridgestone is relevant to a finding of disability. The regulations do not indicate that an individual's age or tenure is a consideration in determining disability; they only indicate that an individual's overall experience in the types of jobs he has worked is relevant in determining whether he is substantially limited in the life activity of working.

Based on the evidence presented, a reasonable jury could not determine that Branch is disabled within the meaning of the act. He has not shown he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes as compared to a similarly-situated person with comparable training, skill, and abilities.

### *Record of a Disability*

Branch could also qualify as disabled under the ADA if he has a history of, or

has been classified as having, a mental or physical impairment that substantially limits a major life activity. 29 C.F.R. § 1630.2(k). Branch asserts that he told his superiors about his condition, but admits that he was not diagnosed as having full-blown carpal tunnel syndrome until after Bridgestone terminated his employment. Branch's symptoms apparently manifested while at Bridgestone, though he was never placed on any medical restrictions or limitations.

■■■■■ Branch has not pointed to any specific medical records or documents indicating that Bridgestone classified him as disabled. He has not even asserted that Bridgestone was aware of any such records. The mere accusations that Bridgestone employees were aware of his symptoms cannot possibly suffice to demonstrate a record of a disabling impairment. Furthermore, to qualify as a disability under the ADA, the impairment indicated in the record must be one that substantially limits a major life activity. *Shepler v. Northwest Ohio Developmental Center*, 205 F.3d 1341 (Table), 2000 WL 191496 (6th Cir.2000) (unpublished decision). As noted, no evidence suggests this is the case. Branch has not presented any evidence of a record of an impairment that substantially limited any major life activity.

### Regarded as Having such an Impairment

Branch asserts that he told his supervisors about his condition and that they were therefore aware of his disability. Bridgestone asserts that it was never informed of Branch's exact limitations and that it always believed Branch could perform the duties required of him but simply refused to do so.

■■■■ Although there appears to be a dispute regarding whether Bridgestone was aware of Branch's limitations, this is not sufficient proof to survive summary judgment on the issue of whether Branch was "regarded as" being disabled within the meaning of act. Even if the Court accepts that Branch informed his supervisors of his condition, he does not meet the definition of "regarded as." As the Supreme Court has explained, to be "regarded as" having a disabling impairment, "it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450, 466 (1999). Branch has not presented any evidence that Bridgestone entertained *misconceptions* regarding Branch's contention. *See Shepler*, 2000 WL 191496, at *5–6. Rather, Branch's only proof on this point is that he in fact has an impairment that limits the major life activity of working and that Bridgestone was aware of it. The "regarded as" requirement, however, demands that Bridgestone either be mistaken in assuming that Branch has a limiting impairment or else be mistaken in its assessment of the severity of his impairment. Branch has not presented proof that a jury could use to support either of these propositions.

### Could a reasonable jury find that Branch is otherwise qualified to perform the essential functions of his desired job, with or without reasonable accommodation?

■■■ The ADA protects only qualified individuals with disabilities. "The term 'qualified individual with a disability' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Branch's argument on this point is strained at best. Bridgestone asserts that it believed Branch could perform the job of tire builder but simply refused to meet the minimum requirement of building eighty-

three tires a day. Courts usually defer to the employer's judgment as to what is an essential function, and the Collective Bargaining Agreement serves as strong proof that the minimum tire requirement is legitimate. In any event, Branch does not dispute that building eighty-three tires a day was an essential function of the job as tire builder. Instead, he asserts that Bridgestone's belief as to his ability is "ample evidence" that no could perform the tasks of his job but simply chose not to. But in fact, Branch's entire case turns on the argument that he was physically unable to perform the repetitive tasks needed to do the job. The entire basis of his claim is that he cannot work with power tools, lift or push tires, or drive for more than two and one-half hours at a time. Instead of proving that he can perform the task of tire builder with or without some accommodation, his claims prove the contrary.

 Branch's better argument is that he can perform the essential functions of an alternative position. Branch never requested any accommodation that would help his performance as a tire builder, but instead requested that he be transferred to a new position. In ADA cases, the plaintiff has the burden of requesting an accommodation, of showing that it is reasonable and possible, and of showing that he can perform the essential functions of that job despite his disability. *Monette*, 90 F.3d at 1183–4. In his deposition, Branch noted that he could have performed a "light duty" trucking job, or could have performed a job in management or in the lab at Bridgestone. Branch's word alone is not enough to support his assertion that he could perform these jobs, especially if the Court accepts that Branch has a disability of some sort. Neither party really discusses these jobs or their essential functions at length. Bridgestone presumably does not discuss them because Branch admitted that his "only requested accommodation would have required Bridgestone to 'bump' other employees from his or her job position [sic] at Bridgestone, to create a vacancy for Plaintiff." (Pl.'s Resp. Def.'s Stmt. Undisputed Mat. Facts, at ¶ 23.) The parties dispute whether this would have required breaching the Collective Bargaining Agreement, but that dispute is irrelevant because the Sixth Circuit has specifically noted that "a reassignment will not require creating a new job, *moving another employee*, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998) (emphasis added). Given Branch's admission, as well as his inability to articulate specific jobs with essential functions he could perform, summary judgment in favor of Bridgestone is appropriate.

### Conclusion

Branch has failed to present evidence that would allow a reasonable jury to conclude that he is disabled under the ADA. He has not shown that he is substantially limited in a broad class or range of jobs, that he ever had a record of a disability, or that Bridgestone entertained misconceptions about his condition. Furthermore, Branch has not demonstrated that he has the ability to perform the essential functions of an alternative job if Bridgestone had offered him such a job as a reasonable accommodation. Given Branch's failure to offer evidence sufficient to prove either of these two requirements, it is unnecessary to explore Bridgestone's other bases for summary judgment. Summary judgment in favor of Bridgestone is GRANTED.

An appropriate order will enter.

### ORDER

Before the Court is Defendant Bridgestone/Firestone's Motion for Summary Judgment on Plaintiff Randle Branch's claim under the Americans with Disabilities Act. For the reasons set forth in the accompanying memorandum, the Defen-

dant's Motion for Summary Judgment is GRANTED.

It is so ORDERED.