NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0108n.06
Filed: February 11, 2005

No. 03-6293

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BDT PRODUCTS, INC.; BURO-DATENTECHNIK GMBH & COMPANY KG, | ) ) ) ) | |
| Plaintiffs-Appellants; | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| LEXMARK INTERNATIONAL, INC., | ) ) | |
| Defendant-Appellee. | ) ) | |

Before: MERRITT, GIBBONS, and ROGERS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Appellants (collectively "BDT") are experts in the design and manufacture of paper handling systems and, as such, have solved difficult paper-handling challenges for the largest printer companies in the world. Appellants allegedly invented and perfected the technology which Lexmark used as part of the paper handling system of its Optra S printer. BDT alleges that Lexmark seeks to avoid paying for the use of appellants' trade secrets disclosed in confidence over a period of almost three years. Defendant-appellee sought summary judgment, which the district court granted on July 31, 2003. BDT appeals the district court's decision. For the reasons listed below, we affirm the district court's grant of summary judgment.

**I.**

-1-

We adopt the statement of facts and statement of the case contained in the district court's opinion. *BDT Prods. v. Lexmark Int'l*, 274 F. Supp. 2d 880, 881-85 (E.D. Ky. 2003).

BDT originally asserted nine causes of action,[1] each of which was premised on Lexmark's alleged misappropriation of BDT's purported trade secrets. On March 11, 2003, the district court issued a Memorandum Opinion and Order finding that Kentucky law applied and dismissing with prejudice BDT's second, fourth, and fifth causes of action. The district court addressed BDT's first and third causes of action. BDT's first cause of action alleged an implied-in-fact contract arising from an alleged agreement reached at a trade show; BDT's third cause of action alleged trade secret misappropriation.

After the district court's ruling finding that Kentucky law applied to the case, Lexmark filed second and third motions for summary judgment. On July 31, 2003, in a consolidated Memorandum Opinion and Order, the district court granted Lexmark's motions thus disposing of BDT's remaining claims. BDT is now appealing the judgment of the district court regarding trade secret misappropriation.

## II.

A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Id.* Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[1]The district court opinion states that BDT asserted only five causes of action. *BDT Prods.*, 274 F. Supp. 2d at 885.

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party establishes an absence of evidence in support of nonmoving party's case, the "nonmoving party has the burden of coming forward with evidence raising a triable issue of fact." *McKay v. Toyota Motor Mfg.,* 878 F. Supp. 1012, 1013 (E.D. Ky. 1995). "To sustain this burden, she may not rest on the mere allegations of her pleadings. Instead, she must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (stating that the nonmoving party is required to go beyond the pleadings to designate "specific facts showing that there is a genuine issue for trial"). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

### A.

As the district court noted, "[i]n order to prevail on a breach of the Uniform Trade Secrets Act ['UTSA'] claim, Plaintiffs must present evidence which satisfies a two prong inquiry. First, they must present evidence which indicates that the information they seek to protect qualifies as a protectable trade secret." *In re Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1375 (N.D. Ga. 2003) (citing *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 794 (W.D. Ky. 2001)). "To show the information is entitled to protection, Plaintiffs must put forward evidence demonstrating that the information (1) has independent economic value, (2) is not readily ascertainable by proper means, and (3) was the subject of reasonable efforts to maintain its secrecy." *Id.* (citing Ky. Rev. Stat. Ann. § 365.880). Lexmark challenges BDT's efforts to maintain secrecy.

BDT argues that implied confidential relationships existed between itself and Hewlett Packard and Tektronix respectively and that the inquiry into whether BDT took reasonable steps to

protect its trade secrets depends on the confidential nature of its relationships with Hewlett Packard and Tektronix. BDT's position is that its collaborative relationships with other companies for the purpose of designing and implementing new products are inherently confidential. BDT alleges that because this is an industry-wide understanding, Lexmark knew that BDT's disclosures of its technology were confidential, and that the dealings with Hewlett Packard and Tektronix were likewise confidential. BDT further argues that its position is bolstered by Hewlett Packard's and Tektronix's agreement that BDT's disclosures were protected by confidential relationships.

In arguing that the district court erred in granting summary judgment, BDT states "[t]he district court overlooked the critical fact that both Hewlett Packard and Tektronix agreed that they were in a confidential relationship with BDT and both companies treated all of BDT's information as confidential. These relationships alone were sufficient to protect BDT's trade secrets." BDT further argues that the district court overlooked the Development and Purchase Agreements between BDT and Hewlett Packard as well as the Development Agreement with Tektronix. Contrary to BDT's argument, however, these documents, even when read in the light most favorable to BDT, clearly demonstrate that the agreements were one-way and did not require these companies to keep BDT's information confidential. Because the language of the agreements is clear, the understanding of the companies is irrelevant.

BDT next argues that the district court erred in finding that an implied duty arising from a confidential relationship was insufficient to protect trade secrets where the UTSA governs. BDT unsuccessfully attempts to distinguish *Dippin' Dots* and *Rogers v. Desa Int'l, Inc.*, 183 F. Supp. 2d 955 (E.D. Mich. 2002). In *Dippin' Dots*, the founder of a flash frozen novelty ice cream company served samples of his product at a company picnic, to officials of a retail development who were

-4-

potential investors, to a fast food chain, and to a dessert company. 249 F. Supp. 2d at 1353-54. There were no confidentiality agreements involved. *Id*. The court in *Dippin' Dots* held that after having made these unprotected disclosures, the novelty ice cream maker could not claim that his putative trade secret was misappropriated. *Id*. at 1375-76. BDT argues that *Dippin' Dots* is distinguishable from the present case "because BDT disclosed its trade secrets in the course of a confidential relationship[] which the recipients – Hewlett Packard and Tektronix – recognized and respected, and the inventor in *Dippin' Dots* disclosed his trade secrets to individuals with whom he had no existing relationship, confidential or otherwise."

In *Rogers*, the plaintiff invented and patented a tree trimming device, which he sent to the defendant prior to patenting to determine if the defendant was interested in producing the invention. 183 F. Supp. 2d at 955. The defendant told the plaintiff it was not interested in producing his invention, but subsequently began producing and marketing a very similar tree trimming device. *Id*. The district court held that there was no trade secret under Kentucky law. *Id*. at 956-58. Again, BDT attempts to distinguish this case based on the plaintiff's unsolicited disclosure of the invention to the defendant, with whom there was no existing business relationship.

*Dippin' Dots* and *Rogers* do differ from the instant case because no confidentiality agreements existed in *Dippin' Dots* and *Rogers*. BDT correctly argues that the definition of trade secrets in the Uniform Act "nowhere requires a written agreement as a prerequisite to preservation of a trade secret" and that there must be "express or implied consent" in order to lawfully disclose a trade secret. (citing Ky. Rev. Stat. Ann. § 365.880(2)(b)). What BDT fails to note is that this is not a situation in which there are no written agreements and, where written agreements do exist, the

terms of the agreement may expressly or impliedly grant consent to disclose.[2] This same reasoning

applies to BDT's argument that disclosures in a confidential relationship are protected even in the

absence of a written agreement. The argument does not apply in the instant case because there were

clear written agreements which protected Hewlett Packard and Tektronix but did not protect BDT.

As Lexmark points out:

> [i]t is well established that court will not recognize implied obligations that are contrary to terms of a party's written confidentiality agreement. "Although a confidential relationship may be implied in a proper case, where there is an express agreement between the parties covering the subject matter, the law will not create another by inference."

(quoting *Ferroline Corp. v. Gen. Aniline & Film Corp.*, 207 F.2d 912, 922 (7th Cir. 1953)).

The district court ruled that the information at issue did not constitute a legally cognizable

trade secret:

> BDT disclosed the entirety of the alleged trade secrets to Hewlett Packard and Tektronix from 1993 through May 1994 without securing protection for these disclosures, and the BDT System lost any trade secret protection it may have had at that time. Yet . . . BDT did not disclose to Lexmark several of the components required to constitute the BDT System combination trade secret until August 1994 and February 1995. Thus, the BDT system ceased to be a trade secret even before BDT fully disclosed it to Lexmark.

*BDT Prods.*, 274 F. Supp. 2d at 890-91. The district court correctly held that, because BDT did not

take reasonable steps to maintain the secrecy of its alleged trade secrets, its misappropriation claim

failed. The reasoning behind this holding was that once a trade secret is disclosed to "others who

are under no obligation to protect the confidentiality of the information, or [the information is]

---

[2]"It should be kept in mind that where the parties have expressly contracted with respect to their relationship and have not provided for confidential disclosure or restrictions based on any confidential duty, the courts are not apt to imply the existence of such a relationship or such restrictions." 1 Roger Milgrim, *Milgrim on Trade Secrets* § 3.03 (2003) (citing *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d 193, 196-97 (Tex. App. 1985)).

otherwise publicly disclose[d] . . ., [the] property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

The district court correctly found that "BDT disclosed all of its purported trade secrets embodied in its BDT System to both Hewlett Packard and Tektronix under 'one-way' confidentiality agreements that only protected the confidences of Hewlett Packard and Tektronix, respectively, not those held by BDT. Those agreements did not obligate either Hewlett Packard or Tektronix to keep confidential any information that BDT disclosed." *BDT Prods.*, 274 F. Supp. 2d at 891. The district court further stated that "[e]ntering into an agreement, but placing few or no restrictions on the uses a third party can make of a trade secret, is [a] sure path to waiver." *Id. See, e.g., Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 534 (D. Md. 2001) (plaintiffs entered into agreement that placed no restrictions on the uses defendants could make of alleged trade secrets). Thus, the district court concluded that "any proprietary interest BDT might have had in the BDT [s]ystem or the other related trade secrets was extinguished when BDT revealed its trade secrets to third parties without requiring those parties to keep that information a secret." *BDT Prods.*, 274 F. Supp. 2d at 891. This conclusion was correct, and we affirm the district court's finding that no trade secrets existed in this case.

Lexmark argues that an alternative ground supporting the finding that there were no trade secrets is the commercial distribution of Hewlett Packard's HP4v printer which began before BDT disclosed all of the elements of the BDT system to Lexmark. BDT's technical expert stated during his deposition that "[a]ll of the [BDT tray] secrets were involved in the 4v tray."[3] Thus, the alleged

---

[3]BDT's technical expert later stated in his declaration opposing summary judgment that he "understood the question and answer quoted by Lexmark from my deposition to relate to the trade secrets in the product design, not the other trade secrets that were disclosed. The release of the HP

trade secrets were ascertainable by proper means by the time the Optra S was released. *See Dippin'*

*Dots*, 249 F. Supp. 2d at 1375 .

**B.**

The second prong that plaintiffs must satisfy in order to prevail on a breach of KUTSA claim

is misappropriation. It is not enough for plaintiffs to show that the information is entitled to

protection, "[r]ather, [p]laintiffs must also show that the protected information has been

misappropriated." *BDT Prods.*, 274 F. Supp. 2d at 890. "To prove misappropriation, [p]laintiffs

must show that the trade secret was acquired by improper means, was disclosed improperly, or was

used by someone without proper consent." *Dippin' Dots*, 249 F. Supp. 2d at 1375 (citing Ky. Rev.

Stat. Ann. § 365.880).

BDT alleges that "the written agreements between BDT and Lexmark did not apply to the

trade secrets at issue in this case" and that the agreements applied only to BDT Products and not to

BDT Buro. As the district court found, this argument fails because those agreements clearly bound

both plaintiffs. Also, as the district court points out, "[p]laintiffs' [a]nswer to Lexmark's

counterclaim admitted that both [p]laintiffs were parties to those agreements." *BDT Prods.*, 274 F.

Supp. 2d at 898.

BDT further argues that "the agreements applied to disclosures in connection with other

existing or anticipated transactions, principally, Lexmark's manufacture and sale of its printers to

BDT as part of the ongoing [original equipment manufacturer or OEM] relationship" and not to

BDT's paper input technology. BDT concedes that the disclosures in the OEM relationship and

BDT's paper-input technology overlapped chronologically, but nevertheless maintains that they

---

4v . . . did not reveal all of the trade secrets which were disclosed in confidence to Lexmark."

were "entirely distinct business relationships which were governed by different agreements and understandings." BDT attempts to bolster its argument by stating that Lexmark employees who received the confidential information understood that the information was not to be shared. As appellee points out, however, courts have found that the personal practices of lower-level employees cannot establish an implied confidential relationship on behalf of an employer. *See Southwest Whey, Inc. v. Nutrition 101, Inc.*, 117 F. Supp. 2d 770, 780 (C.D. Ill. 2000) (holding that, where plaintiff did nothing to require joint venturers to keep trade secret information confidential, "[t]he fact that [the] secrets may not have been revealed . . . [does not constitute] a reasonable effort to maintain the secret"); *Auto Channel*, 144 F. Supp. 2d at 796 (holding that, where plaintiff did not obtain an enforceable nondisclosure agreement, a confidentiality obligation could not be established based on "assurances that [defendant] would not use the information for any other purposes").

The district court held that, even assuming the information was a trade secret under KUTSA, the multiple confidentiality agreements between BDT and Lexmark permitting unrestricted use of information BDT imparted to Lexmark negated any alleged misappropriation. *BDT Prods.*, 274 F. Supp. 2d at 893. The district court was correct in its conclusion that the many agreements between BDT and Lexmark concerning confidential information expressly permitted Lexmark to use any information provided by BDT and thus provided "express or implied consent." *Id*. at 893-94. All seven agreements entered into by BDT and Lexmark between 1990 and 1996 expressly provided that Lexmark was free to use any information disclosed by BDT, even if BDT designated the

information as confidential.[4]  Therefore, Lexmark had a reasonable understanding that it was free to use any and all information disclosed by BDT.

**C.**

While conceding that Kentucky law applies to most issues in the case, BDT argues that "Kentucky law simply did not apply to the disclosures between BDT, Hewlett Packard or Tektronix [] which occurred in other jurisdictions."  As Lexmark points out, however, "BDT did not provide the [d]istrict [c]ourt with any contrary relevant law" from California, Oregon, or Germany.

BDT's arguments with respect to California and Oregon law fail.  California law does recognize implied-in-fact contracts.  *Gunther-Wahl Prod., Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27 (Cal. Ct. App. 2003).  However, "[n]o implied condition can be inserted as against the express terms of [a] contract or to supply a covenant upon which it was intentionally silent."  *Taylor v. Nat'l Supply Co. of California*, 12 Cal. App. 2d 557, 563 (Cal. Dist. Ct. App. 1936); *see also Tanner v. Title Ins. & Trust Co.*, 20 Cal. 2d 814, 824 (Cal. 1942).  Under Oregon law, though it recognizes implied duties of confidentiality under its version of the UTSA, implied duties are voided by express agreements on the same duty.  *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1074-75 (9th Cir. 2000).  Even if California and Oregon law applied, the result would be the same.

Before the district court, BDT did not brief the applicability of German law in connection with Lexmark's summary judgment motions, and the court deemed the argument abandoned.[5]  Here, BDT does not cite any specific German statutes or case authorities in its brief and fails to state to

---

[4]Because the agreements exist, there is no need to determine whether BDT is bound by its position taken in a superseded verified complaint that the agreements apply.

[5]The district court's actual language is that "the issue is moot."

what issue or issues German law applies. Nor does BDT explain how German law would dictate a contrary result. The only reference in the record to any specific provisions of German law is the declaration of BDT's expert witness, which cited two sections of the German Code Against Unfair Competition. BDT simply does not adequately pursue its argument that German law applies. *See* Fed. R. App. P. 28(a)(9) (party must raise contentions and reasons for them with citations to authority, citations to the record, and statement of the applicable standard of review in the argument section of the brief).

Therefore, there is no merit to BDT's argument that the laws of Germany, California, and Oregon should be applied to certain issues in the case.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

**MERRITT, Circuit Judge, concurring.** I would rest the affirmance of this case on the single ground that when Lexmark introduced the tray in question in 1997, whatever trade secret may have existed had already become public information. Hewlett Packard had introduced the same tray, as "HP4V," to the public in late 1994, more than two years earlier. The earlier manufacture and release of the "trade secret" by HP means that the information was now public information. All of the documents of BDT's secret could easily be understood from the HP4V tray, including the Teflon-coated guides.

Thus, I would rest our decision altogether on the "alternative ground" discussed by the Court in the last paragraph of Section II.A. of the opinion. Had the trade secret not already been revealed to the public in the "HP4V" tray long before the Lexmark tray came on the market, I would have some doubts about the proper outcome in this case, and I would be reluctant to dispose of the case on summary judgment.

I agree with the Court that trade secret law should not be interpreted as requiring a written agreement in which Lexmark promised to maintain the confidentiality of BDT's technology. In *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003), a case in which a designer sued a toy manufacturer, the Court reviewed trade secret cases and concluded that confidentiality may be implied from the circumstances and the conduct of the parties without a written agreement protecting the designer.

The fact that here there were written contracts expressly giving Lexmark confidentiality protection, but not BDT, certainly weakens BDT's claims, as the Court concludes. But a reasonable jury might still find that BDT's claimed trade secrets were protected by the inherently confidential relationships between the designer, BDT, and its clients, Lexmark, Hewlett Packard and Tektronix.

Officials from Hewlett Packard and Tektronix gave depositions in which they testified that officials of those clients considered similar BDT design information confidential in the absence of a written agreement.

Nevertheless, in my judgment, once Hewlett Packard made its tray public, the trade secrets in question entered the public domain, and BDT no longer has a plausible argument that its trade secrets revealed earlier to Hewlett Packard, Tektronix and Lexmark — perhaps in secret at that time — remained undisclosed to the public. Summary judgment was justified on this basis.